IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BENJAMIN J. N.,

        Plaintiff,

  v.                                    Civil Action No.
                                          5:20-CV-1370 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF KENNETH        JUSTIN M. GOLDSTEIN, ESQ.
HILLER, PLLC
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          MICHAEL L. HENRY, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

     Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on June 23, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   June 27, 2022
         Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------x
BENJAMIN J. N.,

                              Plaintiff,

vs.                           5:20-CV-1370

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-----------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on June 23, 2022, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | LAW OFFICE OF KENNETH HILLER, PLLC<br>Attorneys at Law<br>6000 N. Bailey Avenue - Suite 1A<br>Amherst, New York  14226<br>  BY:  JUSTIN M. GOLDSTEIN, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>J.F.K. Federal Building<br>Room 625<br>Boston, Massachusetts  02203<br>  BY:  MICHAEL L. HENRY, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1        (The Court and all counsel present by
2             telephone.)
3        THE COURT:  I'd like to begin by thanking both
4   counsel for excellent and spirited presentations.
5        The plaintiff has commenced this proceeding
6   pursuant to 42 United States Code Sections 405(g) and
7   1383(c)(3) to challenge a determination by the Commissioner
8   of Social Security finding that the plaintiff was not
9   eligible for the benefits which he sought.
10       The background is as follows:  Plaintiff was born
11  in October of 1985, he is currently 36 years of age.  He
12  stands 5 foot 7 inches in height and weighs 175 pounds.
13  Plaintiff lives in Camillus in a house with his parents and a
14  sister.  Plaintiff graduated high school with a local
15  academic diploma, he was number 317 out of 394 in his class,
16  with a 75.44 grade point average.  He was in special
17  education and classified as learning disabled in written
18  expressions, reading, and math.  Plaintiff has a driver's
19  license and drives.
20       Plaintiff's work history includes as a sorter for
21  the Onondaga County Library between September of 2004 and
22  February 2013, where he worked four days per week for four
23  hours each day.  He left that position after being harassed
24  and accosted getting on and off the bus which he was required
25  to take to work.  He then went to work with the town of

1  Camillus as a custodian on April 4 of 2014 and still is
2  employed there, or at least was at the time of the hearing in
3  this matter, working three hours per day, five days per week.
4  He testified that he never missed work, that's at page 33 to
5  34 of the administrative transcript.  Plaintiff initially had
6  a job coach at the town of Camillus but no longer, according
7  to his father.  Interestingly, when asked why he could not
8  work 40 hours per week at the hearing, at pages 39 and 40,
9  plaintiff stated that he could not but he was not sure why.
10           Physically, plaintiff does not suffer from any
11 issues that appear to affect his ability to perform basic
12 work functions.
13           Mentally, he suffers from a learning disorder, a
14 neurodevelopmental disorder, and mild mental disability.  He
15 has been described as pleasant, cooperative, and soft spoken.
16 He has not undergone any psychiatric hospitalization or
17 specialized psychiatric treatment.  Plaintiff does receive
18 treatment from a pediatrician, Dr. Thomas J. Abbamont, also
19 from Dr. Suzanne Lamanna, D.O., from October of 2008 to 2019,
20 as well as Family Nurse Practitioner Deirdre Wahl and in the
21 past also received services from Horizon Clinic with the ARC
22 of Onondaga, including Dr. Robert Sprafkin, from January of
23 2006 forward, and Christina Haynes, CAS, which I understand
24 stands for Certificate of Advanced Study.
25           Plaintiff has a fairly robust list of activities of

1    daily living.  He is able to groom, dress, prepare food,
2    clean, do laundry, shop with assistance, drive, he can take
3    public transportation, he socializes with friends and family,
4    he swims, including in the Special Olympics, he likes sports,
5    including softball and basketball, he goes to Crunch,
6    Syracuse Crunch hockey games with friends, and he works on
7    the computer.
8              Procedurally, plaintiff applied for Title II and
9    Title XVI benefits on February 26, 2019, alleging an onset
10   date coinciding with his date of birth.  It was noted that a
11   prior application in 2008 for benefits was denied.  Plaintiff
12   claimed, at page 254, disability based upon a developmental
13   disability, mildly, a learning disability, and a full-scale
14   IQ of 69.  The hearing was conducted to address plaintiff's
15   application for benefits on February 19, 2020 by
16   Administrative Law Judge Kenneth Theurer.  ALJ Theurer issued
17   an unfavorable decision on March 6, 2020, which became a
18   final determination of the agency on October 19, 2020, when
19   the Social Security Administration Appeals Council denied his
20   application for review.  This action was commenced on
21   November 4, 2020 and is timely.
22             In his decision, the ALJ applied the familiar
23   five-step sequential test for determining disability,
24   initially noting that plaintiff has an insured status through
25   December 31, 2024.

At step one he concluded that plaintiff had not engaged in substantial gainful activity since October 7, 1985. He does obviously have earnings but the earnings fell below the presumptive SGA levels.

At step two, ALJ Theurer found that plaintiff does suffer from severe impairments that impose more than minimal limitations on his ability to perform basic work activities, including neurodevelopmental disorder and learning disorder.

At step three, however, he concluded that those disabilities do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listings 12.11 and 12.15.

After surveying the medical evidence of record, the ALJ found that plaintiff retains the residual functional capacity, or RFC, to perform a full range of work at all exertional levels with the following additional limitations. The claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention/concentration for simple tasks, regularly attend to a routine and maintain a schedule. The claimant is able to relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks; that is, he can ask for help when needed, handle conflicts with others, state

1   his own point of view, initiate or sustain a conversation and
2   understand and respond to physical, verbal, and emotional
3   social cues, but he should avoid work requiring more complex
4   interaction or joint efforts with coworkers to achieve work
5   goals.  The claimant is able to handle reasonable levels of
6   simple work-related stress in that he can make simple direct
7   decisions directly related to the completion of his tasks in
8   a stable, unchanging work environment free of fast-paced
9   production requirements.
10          At step four, the administrative law judge
11  concluded that plaintiff did not have any past relevant work
12  to consider and proceeded to step five where, with the
13  benefit of a vocational expert's testimony, he concluded that
14  there is work available in the national economy that
15  plaintiff is capable of performing notwithstanding his
16  limitations, and cited three representative positions,
17  including dining room attendant, hand packager, and
18  housekeeper cleaner, and therefore concluded that plaintiff
19  was not disabled at the relevant times.
20          The court's function of course in this case is
21  twofold.  I must determine whether correct legal principles
22  were applied, and secondly, whether the resulting
23  determination is supported by substantial evidence, which is
24  defined as such relevant evidence as a reasonable mind would
25  find sufficient to support a conclusion.  As the Second

1  Circuit has noted under *Brault*, for example, *v. Social*
2  *Security Administration Commissioner*, 683 F.3d 443, Second
3  Circuit 2012, the substantial evidence standard is extremely
4  deferential and significant to overcome by a plaintiff.  It
5  is even more stringent than the clearly erroneous standard
6  which we're all familiar with.  Under the substantial
7  evidence standard, once an ALJ finds a fact, that fact can be
8  rejected only if a reasonable fact finder would have to
9  conclude otherwise.

10             In this case, plaintiff raises several contentions,
11  some of which are interrelated.  He contends that the
12  residual functional capacity finding is not supported by
13  substantial evidence.  He challenges the weight given to
14  medical opinions, including specifically the failure to weigh
15  Dr. Lamanna and FNP Wahl's opinions.  He concludes that -- he
16  argues at step three there should have been a finding of
17  intellectual disability/severe mental retardation as a severe
18  impairment.  He challenges the failure to request updated
19  medical opinions concerning plaintiff's cognitive ability.
20  He challenges the failure of the ALJ to evaluate plaintiff's
21  education and vocational records, including 14E, which
22  represents a VESID occupational or vocational analysis from
23  March 16, 2004, and 11F, which represents a psychological
24  evaluation performed in February of 2004 at West Genesee High
25  School.  He also challenges the fact that the ALJ selectively

1    cited to the opinions of Ms. Haynes and Dr. Sprafkin and did
2    not weigh its persuasiveness.  He argues that the ALJ
3    improperly failed to consider other factors, the permissive
4    factors under the regulations after finding Dr. Marks,
5    Dr. Momot-Baker, and Dr. Shapiro's opinions to be persuasive,
6    arguing that there was a duty to go beyond consistency and
7    supportability because those were found to be equally
8    persuasive.  And lastly, improper evaluation of plaintiff's
9    subjective reports of symptomology, what we used to refer to
10   before as credibility.
11            Turning first to the medical opinions of record,
12   this case, because of the date of filing of plaintiff's
13   application, is subject to the new revised regulations of the
14   Commissioner concerning the weighing of medical opinions.
15   Under those regulations, the ALJ does not defer or give any
16   specific evidentiary weight, including controlling weight, to
17   any medical opinions or prior administrative medical findings
18   including those from a claimant's medical source.  20 C.F.R.
19   Sections 404.1520c(a) and 416.920c(a).  The ALJ must consider
20   those opinions using the relevant factors, including
21   considering the supportability and consistency of those
22   opinions, and must articulate how persuasive he or she found
23   each medical opinion and explain why.  The ALJ may also, but
24   is not required to, explain how he or she considered the
25   other relevant factors set forth in those regulations.  I

1   note when it comes to weighing of medical opinions,
2   particularly potentially conflicting medical opinions, it is
3   also true that under *Veino v. Barnhart*, 312 F.3d 578 from the
4   Second Circuit 2002, the weighing of such medical opinions is
5   entrusted in the first instance to administrative law judges
6   and so long as the analysis is supported by substantial
7   evidence, it is not the function of the court to reweigh
8   medical opinions.
9              In this case, there is an opinion -- the focus
10  really is on the opinions of Dr. Lamanna and FNP Wahl, and
11  those opinions are rendered on forms that appear at 424 to
12  431 and address primarily physical issues.  It's unclear who
13  sent the forms but it is clear that they are not mentioned in
14  the administrative law judge's decision.  In my view, these
15  do not constitute medical opinions under the regulations and
16  therefore were not required to be mentioned when it comes to
17  the mental aspect.  Clearly they are with regard to the
18  physical, because of the specific functional analysis, but
19  under 20 C.F.R. Section 404.1520b(c)(3), because the portion
20  of that opinion relates to disability, a matter reserved to
21  the Commissioner, there's no obligation, it is not a medical
22  opinion and there's no obligation to evaluate it pursuant to
23  the regulations.  I note that the opinion does not address
24  intellectual disability -- it does address intellectual
25  disability but, as I said, it's a matter reserved to the

1  Commissioner.  The better practice clearly would have been to
2  discuss this opinion, but I find that there is no error.
3           With regard to step two, it is true that at step
4  two, an impairment is severe if it significantly limits a
5  physical or mental ability to do basic work activities which
6  are defined as the abilities and aptitudes necessary to do
7  most jobs.  It is clearly de minimus and intended to screen
8  out all of the weakest cases.  As a backdrop, however, I note
9  that it is the plaintiff's burden through step four to
10 establish limitations associated with any mental or physical
11 conditions.  In my view, Dr. Lamanna's opinions do not
12 establish such limitations, nor does any other evidence in
13 the record.  I also note that because there were other, there
14 were other impairments that were found to be severe at step
15 two, the administrative law judge continued with the analysis
16 through step five and therefore any failure to find a
17 cognitive disability significant at step two would be
18 harmless error.
19          The RFC challenge relates to -- well, the plaintiff
20 has challenged the RFC finding.  An RFC represents the
21 finding of a range of tasks the plaintiff is capable of
22 performing notwithstanding his or her impairments.
23 Ordinarily an RFC represents a claimant's maximum ability to
24 perform sustained work activities in an ordinary setting on a
25 regular and continuing basis, meaning eight hours a day for

1  five days a week or an equivalent schedule.  *Tankisi v.*
2  *Commissioner of Social Security*, 521 F.App'x 29, Second
3  Circuit 2013.  To properly ascertain a claimant's RFC, an ALJ
4  must assess plaintiff's exertional and nonexertional
5  limitations, and of course an RFC finding, as any other
6  finding, must be supported by substantial evidence.
7          In this case, the RFC I find is supported
8  adequately by substantial evidence.  Plaintiff has
9  demonstrated his ability to perform part-time work and was
10 unable to articulate why in his view he could not work 40
11 hours per week five day -- 40 hours per week five days per
12 week.  He's a high school graduate, as the administrative law
13 judge points out, with a 75.44 GPA and was not in the bottom
14 of his class.  He has a driver's license and drives.  He has
15 a very robust group of activities of daily living.  The
16 Dr. Shapiro consultative report from 2008 supports the RFC
17 finding and I agree with the Commissioner that this is not a
18 worsening case of depression or anxiety or PTSD or bipolar
19 disease; it is a case involving literally a cognitive issue
20 which is static.
21         And having reviewed Dr. Lamanna's treatment notes,
22 for example, I did not see any evidence of worsening so I
23 think reliance on Dr. Shapiro's opinion was proper.  I also
24 note that it is supported by NP Wahl's treatment note that
25 appears at 391 of the administrative transcript, plaintiff

1   does good with routine, denies anxiety, depression, memory
2   loss, and mood changes.  It is also supported by the opinions
3   of two state agency consultants, Dr. Marks, Dr. Momot-Baker.
4   It is well accepted that a state agency consultant's opinions
5   can provide substantial evidence, in a case *Heim v.*
6   *Commissioner of Social Security*, 2018 WL 1621521, that's from
7   the Northern District of New York, March 30, 2018; *Camille v.*
8   *Colvin*, 652 F.App'x 25 from the Second Circuit, June 15,
9   2016; and *A.B. v. Commissioner of Social Security*, 2018 WL
10  3232347 from the Northern District of New York, June 29,
11  2018.
12              In my view, the challenge to the residual
13  functional capacity and the weighing of medical evidence
14  requests this court improperly to reweigh, and something
15  proscribed by *Veino*.  Dr. Abbamont, plaintiff's pediatrician,
16  gave an opinion from September of 2004, it appears at 438.
17  The administrative law judge referenced it and indicated why
18  he believed it was, it was not persuasive, including the fact
19  that it predated plaintiff's ability to drive and obtain a
20  driver's license and to perform part-time work.  I note that
21  I've gone through Dr. Lamanna's treatment notes and they do
22  not appear to support a claim of worsening or even the
23  inability to perform pursuant to the RFC.  In April of 2014
24  at page 420, plaintiff was alert, oriented times three,
25  affect appropriate, shy, memory grossly intact, attention

1   within normal limits.  In April of 2015, Nurse Practitioner
2   Carol Scalzo notes at 415 to 419, plaintiff denies
3   psychiatric symptoms, cooperative, memory grossly intact,
4   affect appropriate.  412 to 414, on November 2, 2015 Nurse
5   Practitioner Amy Perin notes that plaintiff was alert,
6   oriented times three, normal affect, memory grossly intact.
7   May of 2016, 407 to 411, plaintiff denies psychiatric
8   problems and symptoms, alert, oriented times three.  May 10,
9   2016, when he appears with a urinary tract infection, at 404
10  to 406 he is described as alert, oriented times three, normal
11  affect, memory generally intact.  May 8, 2017 at pages 400 to
12  403, plaintiff denies psychiatric problems, alert, oriented
13  times three, cooperative attitude, normal affect.
14  December 11, 2017, 397 to 399, able to communicate
15  appropriately for age, alert, oriented times three, no
16  apparent anxiety, depression, or agita, affect appropriate.
17  May of 2018, 393 to 396, plaintiff denies crying, loss of
18  interest, memory loss, displays cooperation, affect
19  appropriate, has job, functions well.  In April 2019, at 391
20  to 392, Nurse Practitioner Deirdre Wahl writes, plaintiff
21  denies anxiety, depression, memory loss, mood changes, does
22  good with routine and is cooperative, affect appropriate.  In
23  June of 2019, 446 to 450, plaintiff denies difficulty
24  concentrating, mood changes, alert, oriented times three,
25  affect appropriate.

1              When it comes to severe mental retardation, the
2     plaintiff suggests that that would be an appropriate finding,
3     but that is defined as having an IQ of between 20 and 34.
4     Plaintiff has conceded, including in his function report,
5     that he has a full-scale IQ of 69; therefore, he does not
6     qualify and there's no evidence to support classifying him as
7     suffering from severe mental retardation.
8              In terms of evaluation of plaintiff's symptoms,
9     obviously an ALJ must take into account subjective complaints
10    of symptomology when making the five-step disability analysis
11    but is not required to blindly accept the subjective
12    testimony of a claimant.  Instead, the ALJ retains broad
13    discretion to evaluate a claimant's subjective testimony and
14    when doing so, should consider a variety of factors that
15    ordinarily would inform any finding of credibility in any
16    context and must obviously explain the basis for his or her
17    finding.  Factors that can be considered include daily
18    activities, location, duration, frequency, and intensity of
19    symptoms, precipitating and aggravating factors, type,
20    dosage, effectiveness and side effects of any medications
21    taken, other treatment received, and other measures taken to
22    relieve symptoms.
23             In this case, the ALJ followed the prescribed
24    two-step method of determining and weighing the symptomology,
25    I believe it's Social Security Ruling 16-3p sets forth that

1   prescribed analysis.  The ALJ is entitled to considerable
2   deference and essentially the plaintiff is asking the court
3   to reweigh the evidence which should only be done if there's
4   a compelling reason.  In this case, I don't find any and I
5   defer to the ALJ's analysis of plaintiff's subjective
6   complaints.
7           Next there is an argument that the Commissioner
8   erred by failing to consider the VESID report from March of
9   2004 that appears at 328 to 341 of the record and the Sarah
10  Abair 2004 psychological evaluation from February of 2004, it
11  appears at 434 to 437.  Neither opinion was referenced.  In
12  my view, for the same reasons cited earlier, those opinions
13  do not constitute medical opinions.  In any event, plaintiff
14  has not explained how consideration of those opinions would
15  change the outcome of the case, and of course those opinions
16  are stale.  Interestingly, in the VESID report, at 332 to
17  334, Beth Welch notes that plaintiff might do well as a clerk
18  or janitor, kind of prescient since he is now in a position
19  of a janitor.
20          When it comes to duty to develop the record, I
21  don't find any glaring gaps in the record.  The record
22  contains sufficient evidence to evaluate plaintiff's claim of
23  disability.  I note that there is some responsibility,
24  although it's a nonadversarial proceeding, at a hearing there
25  is still some responsibility of a plaintiff's representative.

1   In this case plaintiff's representatives were asked, or was
2   asked whether the record was complete and stated that it was,
3   and that could be viewed as sufficient and as a waiver of any
4   claim of any gap that should have been filled.  *Latonya*
5   *T.E.B. v. Commissioner of Social Security*, 2021 WL 4033148
6   from the Northern District of New York, September 3, 2021,
7   and *Jason C. v. Berryhill*, 2019 WL 1409804, from the Northern
8   District of New York, March 28, 2019.  Although let me be
9   clear, I don't believe that there was a gap that should have
10  been filled.
11          I'll close by saying I believe this to be somewhat
12  of a close case and the ALJ's decision is certainly not a
13  model of clarity or thoroughness, there should have been
14  discussion of Dr. Lamanna's opinions, but I don't find any of
15  the errors that I've alluded to to be fatal.  And so in
16  conclusion, I find that the determination resulted from the
17  consideration of proper legal principles and is supported by
18  substantial evidence, so I will grant judgment on the
19  pleadings to the defendant and order plaintiff's complaint
20  dismissed.
21          Thank you both, I hope you have a good day.
22          MR. HENRY:  Have a good day.
23              (Proceedings Adjourned, 12:00 p.m.)
24
25

```
 1            CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4       I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5   Official Realtime Court Reporter, in and for the

 6   United States District Court for the Northern

 7   District of New York, DO HEREBY CERTIFY that

 8   pursuant to Section 753, Title 28, United States

 9   Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16            Dated this 24th day of June, 2022.

17

18

19                    /S/ JODI L. HIBBARD
                     _____
20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25
```